# United States Court of Appeals
# for the Fifth Circuit

―――――――――

No. 24-50378

―――――――――

United States Court of Appeals
Fifth Circuit

**FILED**
August 12, 2026

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Gerald Talman Brann,

*Defendant—Appellant*.

―――――――――――――――――――――――

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CR-188-1

―――――――――――――――――――――――

Before Richman, Higginson, and Douglas, *Circuit Judges*.
Priscilla Richman, *Circuit Judge*:

Gerald Talman Brann pleaded guilty to sexually exploiting his stepdaughter within the meaning of 18 U.S.C. § 2251(a). As part of Brann's plea agreement, he agreed to pay at least $100,000 in restitution for the child's estimated future counseling costs, and the district court ordered him to pay that amount. In the plea agreement, Brann also waived his right to appeal his conviction or sentence, including any restitution order. He now contends the restitution award exceeds the statutory maximum under 18 U.S.C. § 2259, arguing there is no evidence of the dollar amount or "a dollar range" of the victim's losses, and therefore, that the appeal waiver does not

apply. We affirm the restitution award. However, we remand to the district court for the limited purpose of correcting clerical errors in the judgment.

## I

The facts of this case are deeply disturbing. It is difficult to write about them. Nevertheless, we find it necessary to provide at least some detail about the offense and its impact on the young victim. We must determine whether there is evidence that Brann proximately caused the victim to need past and future treatment, therapy, tutoring, or counseling, and, if so, whether the reasonable cost of such treatment, care, or services is less than $100,000. The extent and nature of the physical, emotional, and psychological injuries the child has sustained due to Brann's offense are probative. For those who do not wish to know graphic details about the nature and extent of Brann's offense and its impact on the victim, please proceed to Part II.

Brann and his wife engaged in ongoing sexual abuse and assault of his wife's daughter, who was 10 years old at the time Brann was sentenced. Brann was indicted on seven counts, including two counts of sexual exploitation of a child under 18 U.S.C. § 2251(a), two counts of distribution of child pornography under § 2252A(a)(2), two counts of receipt of child pornography under § 2252A(a)(2), and one count of possession of child pornography under § 2252A(a)(5)(B). As part of a plea deal, Brann pleaded guilty to one count of violating 18 U.S.C. § 2251(a). He "agree[d] with the factual basis supporting the plea agreement," which confirmed that Brann and the child's mother photographed and videoed the sexual abuse and assault of the child and posted these images and videos to Wickr Me, an encrypted service.[1]

---

[1] *See United States v. Lazar*, No. 1:20-CR-78(3), 2024 WL 1329908, at *1 (E.D. Tex. Mar. 26, 2024).

In his plea agreement, Brann "agree[d] . . . to pay restitution . . . in an amount not less than $100,000 for [the child victim's] future counseling costs" under 18 U.S.C. §§ 2259, 3663, 3663A and 3664. Brann also waived his right to appeal his "conviction or sentence on any ground" and "any challenges to the determination of any period of confinement, monetary penalty or obligation, restitution order or amount." He reserved only the right to raise a claim of ineffective assistance of counsel or prosecutorial misconduct of a constitutional dimension. In exchange for Brann's pleading guilty to one count of violating § 2251(a), the government dismissed the six other counts against him.

The court sentenced Brann to 360 months of imprisonment, followed by a lifetime term of supervised release, and "ordered that [Brann] make restitution in the amount of $100,000" to his stepdaughter, which would "begin upon release from custody."

The plea agreement reflects that images and videos depicting the victim were found on Brann's cellular phone. Count Two, the basis for Brann's conviction, involved a 51-second video depicting him with his stepdaughter. It was filmed in a hotel room on or about September 2, 2019. She was nude. She was six years old at the time. The penis of an adult nude male as well as the vagina of the child are shown, and explicit sexual contacts between the child's hands and the male's penis are videoed, as well as the male's contacts with the child's vagina. The male's voice directing the child can be heard, as well as her protests of pain. The male is kneeling between the child's spread legs. Brann admitted in his plea agreement that he was the male in the video, he used his phone to create the video, and he shared it "using an internet-based messaging application."

Brann's plea agreement recounts that during a child pornography investigation, the FBI found that individuals were using the Wickr Me

application as a platform for the distribution and possession of child pornography and to engage in discussions related to the sexual exploitation of children.  Numerous images of Brann's stepdaughter were posted to the application depicting her at various ages, beginning when she was 5 or 6 years old, in various stages of undress, and some showed her "vagina lasciviously displayed."

Brann admitted in his plea agreement that both he and his wife sexually assaulted his stepdaughter, recorded the assaults on their phones, and shared the graphic material with one another as well as others who have a sexual interest in children.  The Presentence Investigation Report ("PSR") more graphically details sexual contact between Brann and the child, as well as how the victim's mother sexually assaulted her.  The victim's mother encouraged Brann in extremely explicit and vile text messages to sexually assault her child in a particular manner.  Brann responded, expressing his eagerness to do so when he arrived home from a trip.  The PSR also graphically details Brann's request that his wife sexually assault the child in a particular way, video it, including specifically "all" of the child and her vagina, and send the video to him so he could use it to gratify himself sexually while traveling during his job as a truck driver.

Once the FBI identified the child victim, Brann's plea agreement reflects that she was forensically interviewed at a child advocacy center in January 2023, before her mother and stepfather were taken into custody in March 2023.  At this initial interview, the victim was shown multiple child pornography images, including ones distributed online, and she identified herself in the images shown to her.  The victim said that Brann liked taking photos and videos of her when she was wearing underwear and when she was not.  She said that both Brann and her mother created images of her.

No. 24-50378

Subsequently, when the victim was told Brann and her mother had been taken into custody, the PSR states that, according to documentation received from the victim's case worker, the child began breaking down and crying in the middle of class and asked to speak to her teacher. She told her teacher that Brann had multiple sexual encounters with her in his semi-truck. She related that both she and Brann were naked and had sexual contact even though she did not want to. The PSR reflects that this information was corroborated by the case agent with videos filmed in hotels and in a semi-truck, and the locations of the videos match the pattern disclosed by the child victim. In a second forensic interview that occurred after Brann and the child's mother were arrested, the victim drew a picture of the semi-truck recalling details of the layout of the truck and the sexual contact between the victim and Brann.

Brann and the victim's mother were taken into custody when the victim was nine or ten years old, and the child was placed in foster care. The PSR recounts that her foster parent located a purple vibrator that had fallen out of the child's bag, and the child's case worker was notified. The child was interviewed about the device, and she explained that Brann had bought her the "buzzer" because "he liked her so much." The child said that the buzzer was for her "privates" and that Brann had shown her how to turn it on and use it. The young victim shared that her mother and the "whole family knew" about the buzzer. Brann requested the victim to take a picture of herself using the buzzer with her "private," [sic] which she did.

The victim has three siblings, who were also removed from the family's home. The children were separated and placed in two different foster homes.

In January 2023, four days after the victim's first forensic interview occurred and before her parents were arrested, a Court Appointed Special

Advocate (CASA) was appointed by a state court for the victim and her three siblings. The CASA visited the children at least once a month for more than a year afterwards. She prepared a written report that was filed with the district court in April 2024, shortly before Brann's sentencing hearing.

The CASA's victim impact statement provided details regarding the psychological and emotional injuries the child has suffered and will likely continue to suffer. It explained that "[t]he fact that the child victim was forced to engage in adult behaviors has resulted in significant struggle, confusion and misunderstanding as to how to interact with peers. She struggles with communication and socialization and either gravitates towards much younger children or older men."

The report also recounted that the victim "struggles academically as a result of having been taken out of school to travel with Mr. Brann," and that "she is in an applied skills program for children with delayed learning, has an IEP and is significantly behind her peers as a result of having not been in school regularly . . . [which] causes great anxiety and stress for her." At the time of sentencing, the report reflected, "[i]t is likely she will be held back and repeat fifth grade to prevent the transition to middle school from being so traumatic. The child victim currently requires and will continue to need tutoring services."

The CASA further reported that the victim "struggles with perfectionism and body image issues. Mr. Brann told her she was 'perfect' and rewarded her with gifts. Mr. Brann told her she needed to be small, in order to be desirable." The CASA recounted that the child "attempted to squeeze into undergarments that were too small, causing uncomfortable vaginal discharge," and that "[t]his is proving to be particularly problematic as [the child] transitions into puberty and experiences bodily growth and change." The CASA's impact statement reported that the child "struggles

6

with how to dress and act appropriately for her age after having been sexualized by Mr. Brann." "Mr. Brann told [his stepdaughter] not to disclose any of what he was doing to her, thereby causing her to have trust issues. [The child] also struggles with lying and is learning the importance of being truthful."

The victim told the CASA that when Brann was "having sex with her, she would play on her tablet and go into another world." The CASA observed that "[a]s a result of being forced to ignore the atrocities that were happening to her, [the victim] struggles with identifying, processing, expressing and regulating her emotions."

The impact statement confirmed that the child "participates in weekly individual therapy to address and process the emotional and psychological damages by Mr. Brann. Therapy is working to address [her] struggles with anxiety, change, confidence and self-esteem." However, "[i]t is unknown how long [the victim] will need to remain in therapy."

The report also states that the "trauma of removal" from their home that the victim and her siblings suffered, "coupled with the uncertainty of permanent placement, has resulted in an extraordinary amount of stress and anxiety for all four" of the siblings. "The sibling group has been split and may not be reunified, forever altering the course of [the victim's] and her siblings' family relationships."

The PSR reflects that the four siblings "have been attending therapy sessions individually but have also participated in group therapy, wherein all the children are present." One of the victim's brothers has stated during therapy that he believes Brann and their mother were arrested because of pictures of the victim on their phones.

The CASA offered her opinion that "[t]he loss of [the victim's] innocence and childhood is priceless. The challenges she will face for the rest of her life are innumerable."

The evidence is unrefuted that the child was sexually assaulted by her stepfather with the knowledge and indeed encouragement of her own mother. Her stepfather videoed and photographed incidents of the victim's assault and shared them online. As of the time Brann was sentenced, only he and his wife had been charged with possession of or trafficking in pornographic images of the victim. His wife had been taken into custody, indicted separately, and was awaiting sentencing. Others who are guilty of child pornography crimes involving images of the child victim in the present case had not yet been apprehended and punished when Brann was sentenced, and they may never be held accountable to the victim for her losses.

## II

We first consider the precedent that applies in determining whether Brann's appeal waiver is enforceable and precludes consideration of his claim that the restitution he was ordered to pay exceeds the statutory maximum amount. The Supreme Court's recent decision in *Hunter v. United States*[2] is our guidepost. The Court held in that case that "an appeal waiver is unenforceable when it would result in a miscarriage of justice. That rule, properly understood and applied, sets a high bar: The waiver may be set aside only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute."[3] The Court continued: "The error must

---

[2] 146 S.Ct. 1702 (2026).

[3] *Id*. at 1713.

be obvious—not one a judge could reasonably make. And it must be of the type that would undermine public confidence in the judiciary."[4]

The Supreme Court offered "a few examples of the kinds of errors . . . that would bring the judiciary into disrepute."[5] The first of three non-exclusive examples given was "a defendant may appeal a sentence exceeding what the relevant statute allows—most commonly, a term of years above the maximum prescribed."[6]

The second example offered was "a defendant may appeal a sentence that is infected with a blatant constitutional error, such as when a judge takes account of a constitutionally impermissible factor (like race) or imposes a constitutionally infirm condition of supervised release (like barring a defendant from becoming pregnant)."[7]

The third example given was that "a defendant may appeal if his sentence was imposed without 'some minimum of civilized procedure' as in, yes, the 'twelve orangutans' case—or less extravagantly, one in which the judge refused to hold a hearing consonant with basic principles of law."[8]

The Court reiterated that the three examples it gave "are just

_____

[4] *Id.*

[5] *Id.* at 1714.

[6] *Id.* (citing *United States v. Kim*, 988 F.3d 803, 810-811 & n. 1 (5th Cir. 2021)).

[7] *Id.* (citing *United States v. Elliott*, 264 F.3d 1171, 1173 (10th Cir. 2001)).

[8] *Id.* (citing *United States v. Adkin*s, 743 F.3d 176, 192-193 (7th Cir. 2014); *United States v. Behrens*, 375 U.S. 162, 165-166 (1963)); *see also Hunter*, 146 S.Ct. at 1712 ("[I]f the parties stipulated to trial by 12 orangutans[,] the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants.") (quoting *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995))).

examples, not intended to be exclusive, but they serve to illustrate the high bar a defendant must surmount to overcome an appeal waiver."[9]

The first example regarding statutory maximum sentences has clear import in the case presently before us. Though that example said that "a term of years above the maximum prescribed" is the "most common[]" occurrence of a sentence that exceeds a statutory maximum, the Court cited the Fifth Circuit's decision in *United States v. Kim*.[10] That case involved a claim that the amount of restitution ordered "exceed[ed] the amount of the victim's actual loss."[11] Applying 18 U.S.C. § 3663A(a)(2),[12] the Fifth Circuit held in *Kim* that "a district court imposes a sentence expressly foreclosed by statute when it orders restitution . . . for losses not proximately caused by the defendant."[13] The Fifth Circuit further held in *Kim* that "a plea agreement's failure to expressly reserve the right to raise a statutory maximum challenge is 'of no moment' because 'an "in excess of the statutory maximum" challenge, if properly raised on appeal, would not be barred by an appeal waiver.'"[14] The *Kim* decision explained that "even when a defendant,

---

[9] *Id*. at 1714.

[10] 988 F.3d 803 (5th Cir. 2021).

[11] *Id.* at 805.

[12] 18 U.S.C. § 3663A(a)(2) (defining "victim" to mean "a person directly and *proximately* harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern") (emphasis added)).

[13] *Kim*, 988 F.3d at 810 (alteration in original) (quoting *United States v. Leal*, 933 F.3d 426, 431 (5th Cir. 2019)).

[14] *Id*. at 810-11 (quoting *Leal*, 933 F.3d at 430); *see United States v. Quintanilla*, 180 F.4th 788, 794 (5th Cir. 2026) ("As we have held in applying *Paroline*, 'if a court orders a defendant to pay restitution under § 2259 without determining that the defendant's conduct proximately caused the victim's claimed losses, the amount of restitution necessarily exceeds the statutory maximum.' And '[c]laims that a sentence exceeds the

No. 24-50378

prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law."[15]

In the case before us, Brann, the prosecutor, and the district court all agreed that restitution in the amount of at least $100,000 would compensate the child victim for the losses she had sustained and would sustain in the future for treatment, therapy, tutoring, and counseling to help her deal with the traumatic physical, psychological, and emotional injuries inflicted upon her by Brann as a consequence of his commission of the offense set forth in 18 U.S.C. § 2251(a). However, if $100,000 is greater than "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim,"[16] then that amount exceeds the statutory maximum amount of restitution that Brann may be required to pay.

We must resolve the merits of Brann's contention that the restitution ordered exceeds the statutory maximum. As *Hunter* makes clear, and as our court has long held, "an otherwise valid appeal waiver is not enforceable to bar a defendant's challenge on appeal that his sentence, including the amount of a restitution order, exceeds the statutory maximum . . . ."[17] Accordingly, we do not enforce the plea agreement's appeal waiver provision as to this inquiry.

_____

statutory maximum are not barred by a waiver of appeal.'" (alteration in original) (first quoting *United States v. Winchel*, 896 F.3d 387, 389 (5th Cir. 2018), and then quoting *United States v. Swarner*, 168 F.4th 309, 311 (5th Cir. 2026))).

[15] *Id.* at 811 (quoting *Leal*, 933 F.3d at 430-31).

[16] 18 U.S.C. § 2259(c)(2).

[17] *United States v. West*, 137 F.4th 395, 399 (5th Cir. 2025) (quoting *Kim*, 988 F.3d at 811); *see also Swarner*, 168 F.4th at 311 ("Claims that a sentence exceeds the statutory maximum are not barred by a waiver of appeal." (citing *Leal*, 933 F.3d at 431)).

No. 24-50378

No one questions that the victim in this case sustained horrific injuries as a direct result of Brann's offense, and no one questions that she has undergone treatment and counseling, has required tutoring, and will require treatment and counseling in the future as a direct consequence of Brann's criminal offense. The only question with regard to the statutory maximum issue is whether the $100,000 amount is supported by some evidence.

We conclude that Brann's written statement in his plea agreement that his stepdaughter would incur at least $100,000 in costs for future therapy is some evidence to support that amount. His statements during the sentencing hearing are further evidence. If Brann were not the defendant, but offered his projection of the cost of the child's future treatment solely as her stepfather, that would be some evidence of the future projected costs. Not the best evidence perhaps, but some evidence. The fact that Brann is also the defendant does not strip his assessment of his stepdaughter's future treatment costs of its evidentiary or probative value. Additionally, reported circuit court decisions in other child pornography cases reflect that $100,000 for projected treatment costs is reasonable and well within the range of projected costs for other similarly situated victims over the course of their lives. We turn to a more detailed consideration of the applicable law and Brann's sentencing process.

### III

We must clarify what statute governs in determining whether the restitution Brann was ordered to pay exceeds the statutory maximum. His written plea agreement cites four statutes: "Defendant agrees that the court will impose restitution under 18 U.S.C. §§ 2259, 3663, 3663A and 3664." The PSR states that "[a]s part of the plea agreement, the defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A applies and that the Court is required to order the

12

defendant to make restitution." The PSR similarly recommended that restitution in the amount of $100,000 be imposed pursuant to 18 U.S.C. § 3663A. The district court adopted the PSR's statements as its findings. However, the judgment does not specify the statutory basis for imposing restitution. By contrast, the judgment does expressly indicate, in two separate places, that a special assessment of $10,000 was imposed under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), which amended parts of 28 U.S.C. § 2259, including sections pertaining to restitution.[18]

If § 3663(a)(3) governed restitution in child pornography cases, our inquiry would be at an end. That statute provides: "The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."[19] However, neither § 3663(a) nor § 3663A applies to Brann's offense. As our court explained in *United States v. West*,[20] "offenses related to child pornography are covered by 18 U.S.C. § 2259, which expressly applies '[n]otwithstanding section 3663 or 3663A.'"[21]

Brann was convicted of producing child pornography under 18 U.S.C. § 2251(a). Accordingly, 18 U.S.C. § 2259(a), (b)(1), (b)(3)-(4), (c), and (d) apply.

**IV**

---

[18] *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, § 3(a), (b), 132 Stat. 4384.

[19] 18 U.S.C. § 3663(a)(3).

[20] 137 F.4th 395 (5th Cir. 2025).

[21] *Id*. at 402 (quoting 18 U.S.C. § 2259(a)); *see also* 18 U.S.C. § 2259(a) ("In general.—Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.").

No. 24-50378

Brann filed a notice of appeal, in spite of the appeal waiver in his plea agreement. Appointed appellate counsel moved to withdraw, filed an *Anders* brief, and certified that the government intended to enforce the appeal waiver. This court directed Brann's counsel to reconsider whether the $100,000 restitution order exceeded the statutory maximum, citing our decisions in *United States v. Kim*[22] and *United States v. West*.[23]

Counsel filed a supplemental *Anders* brief. Counsel represented in that brief that she "remains of the view that the appeal presents no nonfrivolous ground for appellate relief under this Court's precedent." Our court disagreed with this assessment and directed Brann's counsel to file a brief on the merits, again citing *West* regarding the statutory maximum issue, and additionally citing *United States v. Swenson*[24] regarding the standard of review.

A merits brief has been filed, and Brann now argues that his sentence exceeds the statutory maximum and, accordingly, that the appeal waiver does not bar the challenge to the restitution the district court ordered. Citing the Supreme Court's decision in *Paroline v. United States*,[25] Brann contends that the district court erred "by failing to make any findings on the record regarding whether the losses or projected treatment costs were proximately caused by the offense" and that the $100,000 award "has no evidentiary support in the record." The government contends that the record reveals the opposite, "support[ing] the conclusion that Brann proximately caused

---

[22] 988 F.3d 803, 810-11 (5th Cir. 2021).

[23] 99 F.4th 775, 781-82 (5th Cir. 2024), *withdrawn and substituted*, 137 F.4th 395 (5th Cir. 2025)).

[24] 25 F.4th 309, 322 (5th Cir. 2022).

[25] 572 U.S. 434 (2014).

14

No. 24-50378

his [stepdaughter] at least $100,000 in losses," which would mean the award is within the statutory maximum.

Brann did not object to the restitution order in the district court. Quite the opposite. In any event, since he did not object, the question of the standard of review that we should apply is not clear.[26] In *Swenson*, we applied

---

[26] *See generally United States v. Sepulveda*, 64 F.4th 700, 712-713 (5th Cir. 2023):

> [W]e generally review the legality of a restitution order de novo even if a defendant failed to preserve the issue, because restitution that exceeds the court's statutory authority is an illegal sentence, which always constitutes plain error. *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (citations omitted). "[A]n order of restitution that exceeds the victim's actual losses or damages is an illegal sentence." *United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012) (citation omitted). Applying those principles, some of our cases have reviewed de novo the amount of restitution ordered where the defendant attacks the causal link between the restitution ordered and the offense. *Id.*; *cf. United States v. Swenson*, 25 F.4th 309, 322 (5th Cir. 2022) (reviewing restitution order de novo where defendant argued that the award included activity that was not part of the convicted offense). But in other cases, we have applied an abuse-of-discretion standard under similar circumstances. *See United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008). Recently, we stated that "[w]e review the legality of [a restitution] award de novo, . . . its amount for abuse of discretion," and the court's "[factual] finding regarding the amount of loss . . . for clear error." *United States v. Williams*, 993 F.3d 976, 980 (5th Cir. 2021) (citations omitted).

*See also United States v. Swenson*, 25 F.4th 309, 322 (5th Cir. 2022):

> As an initial matter, the parties disagree about whether de novo review or plain error review applies to the restitution order since Swenson did not object to the restitution order at sentencing. *Compare United States v. Nolen*, 472 F.3d 362, 382 (5th Cir. 2006) (holding that an unpreserved

No. 24-50378

de novo review to a defendant's unpreserved restitution challenge, reasoning that our decision in *Nolen* "applie[d] [de novo review] under the rule of orderliness [and it is] the earliest case to address the issue."[27]   After we decided *Swenson*, however, we recognized in *United States v. Shah*[28] that our decision in "*United States v. Inman . . .* predates *Nolen*[, and *Inman*] applied plain error review."[29]

We do not venture into this murky area of procedure.   Since we conclude the restitution award does not exceed the statutory maximum even under a de novo standard, we apply that standard.[30]

————————————————————

challenge to a restitution order is reviewed de novo), *with United States v. Maturin*, 488 F.3d 657, 660 (5th Cir. 2007) (applying plain error review when a defendant does not object to the restitution order). We have previously noted this conflict in *United States v. Bevon*, 602 F. App'x 147, 151 (5th Cir. 2015) (per curiam). As we stated in *Bevon*, *Nolen* applies under the rule of orderliness as it is the earliest case to address the issue. *Id.; see Shami v. Comm'r*, 741 F.3d 560, 569 (5th Cir. 2014) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion." (quoting *H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000))). We therefore apply de novo review to the restitution order.

[27] *Swenson*, 25 F.4th at 322; *see United States v. Nolen*, 472 F.3d 362, 382 (5th Cir. 2006) (applying de novo review to the defendant's unpreserved restitution challenge).

[28] 95 F.4th 328 (5th Cir. 2024).

[29] *Id.* at 386; *see United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (reviewing for plain error because the defendant "did not raise his challenge to the restitution order below").

[30] *But see United States v. Quintanilla*, 180 F.4th 788, 794 (5th Cir. 2026) ("Quintanilla did not object to the restitution below, so any unwaived merits challenges are reviewed for plain error.") (citing *United States v. West*, 137 F.4th 395, 401 (5th Cir. 2025); Fed. R. Crim. P. 52(b)).

No. 24-50378

## V

In child pornography cases, "binding precedent has repeatedly held [that] orders of restitution without a statutorily required proximate-cause analysis exceed Congress's prescribed limits on punishment and thus constitute sentences above the statutory maximum."[31]   In *Paroline*, the defendant was convicted of possessing child pornography.[32]  In that case, the parties "stipulated that the victim did not know who [the defendant] was and that none of her claimed losses flowed from any specific knowledge about him or his offense conduct."[33]   By contrast, Brann was convicted under 18 U.S.C. § 2251(a) of producing child pornography, which involved the victim in this case.  In *Paroline*, the Supreme Court observed that "but-for causation could be shown with ease in many cases involving producers of child pornography, see § 2251(a)."[34]  That is certainly true here to the extent that Brann is the direct cause of his sexual assaults of his stepdaughter and the creation and dissemination of depictions of that conduct.  The question is whether the evidence supports the conclusion that Brann proximately caused at least $100,000 of past and future economic losses to the victim.

In *Paroline*, the Supreme Court explained that "[t]here are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development."[35]   The Court admonished that "[d]oing so would

---

[31] *West*, 137 F.4th at 399 (collecting cases).

[32] *Paroline v. United States*, 572 U.S. 434, 439 (2014).

[33] *Id*. at 442.

[34] *Id*. at 450.

[35] *Id*. at 459-460.

17

unduly constrain the decisionmakers closest to the facts of any given case."[36] The Supreme Court "enumerated certain factors as 'rough guideposts' for this inquiry."[37] These include:

> [1] the number of past criminal defendants found to have contributed to the victim's general losses;

> [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

> [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

> [4] whether the defendant reproduced or distributed images of the victim;

> [5] whether the defendant had any connection to the initial production of the images;

> [6] how many images of the victim the defendant possessed;

> [7] and other facts relevant to the defendant's relative causal role.[38]

"The factors, however, 'need not be converted into a rigid formula, and [the Fifth Circuit has] since directed district courts to use discretion and sound judgment in applying them."[39]

---

[36] *Id.* at 460.

[37] *United States v. Teijeiro*, 79 F.4th 387, 395 (5th Cir. 2023) (quoting *Paroline*, 572 U.S. at 460).

[38] *Id.* (alterations in original) (quoting *Paroline*, 572 U.S. at 460).

[39] *Id.* (internal citation removed) (quoting *Paroline*, 572 U.S. at 460).

The Supreme Court noted in *Paroline* that "the approach articulated above involves discretion and estimation."[40]  The Supreme Court further explained that "courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others."[41]  That recognition and admonition is particularly applicable in the case before us.

Brann's plea agreement, the PSR, the CASA's victim impact statement, and Brann's allocution at his sentencing hearing all focused on the harm he directly caused to his stepdaughter (and to some extent the harm his wife caused).  This evidence also focused on the direct losses the victim had incurred and would reasonably be projected to incur in the future for treatment, therapy, tutoring, and counseling.  None of the evidence engaged with the primary focus in *Paroline*, which was how to determine "the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim."[42]  In the present case, there is virtually no discussion in the record before the district court that the child victim had given thought to the fact that images of her might be widely available on the internet, perhaps for years to come.  The need for restitution for future counseling costs described in Brann's plea agreement, the PSR,

---

[40] *Paroline*, 572 U.S. at 462.

[41] *Id*.

[42] *Id*. at 449.

and the CASA's report all focus on how the child victim was injured by Brann directly.

As discussed above, as the victim's stepfather, Brann could present evidence of what he estimated the future costs of counseling would reasonably be. In his dual role as the defendant and her stepfather, his focus was on the reasonably projected future costs of treatment, therapy, tutoring, and counseling necessitated by his own guilt in committing the offense for which he was convicted. Indeed, the district court listened to Brann's allocution, and Brann stated that he had "unleashed demons upon [himself] . . . showing [him] his guilt." "[He] kn[e]w [he] ha[d] failed completely, as a husband, as a father." He knew this was not "about [his] pain," but "about moral judgment of [his] very failures and about the effect they had on [his] family." He recognized that his "stepdaughter . . . and her siblings'. . . lives forever changed because of [his] actions which are engraved in [his] memory."

Brann told the district court that meeting a "victim of sexual abuse [that occurred] when [the victim] was a child . . . opened [his] eyes," and he stated that, because of that interaction, he "knew the full impact [his] actions will forever have on [his] [step]daughter . . . the effect, trauma, destructive forces that because of [him his] [step]daughter faces." He ended by saying: "I will not hide and I will stand and accept every legal sentence you place on me this day."

The court heard from the government's counsel, who read the child's victim impact statement into the record, even though "[t]he Court ha[d] it." The government then responded to Brann's allocution and stated it was "asking for a sentence at the maximum of 30 years and . . . for restitution in the amount of $100,000 for ongoing tutoring and counseling" for Brann's stepdaughter. The court asked Brann's counsel if she had "any

opposition to . . . the financial component," and she responded "I don't have any to the financial component, Your Honor," but she noted that she "fe[lt] like the $100,000 is, frankly, insurmountable . . . so anything on top of that . . . [is] not a reality."

What is evident from this record is that virtually no consideration was given to (1) "the amount of the victim's losses caused by the continuing traffic in the victim's images,"[43] (2) "the number of past criminal defendants found to have contributed to the victim's general losses,"[44] (3) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses,"[45] (4) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted),"[46] much less (5) attorney's fees the victim may incur in the future, as contemplated in 18 U.S.C. § 2259(c)(2)(E).

Accordingly, the $100,000 amount is more likely than not less than the victim's reasonably projected future losses proximately caused by those who have in the past and will in the future view images of the victim in this case when the victim becomes more fully aware of the fact of dissemination of her images to others and comes to terms with that fact throughout her life. The district court proceedings instead focused primarily, if not exclusively, on (1) "whether the defendant reproduced or distributed images of the victim," (2) "whether the defendant had any connection to the initial production of the images," (3) "how many images of the victim the

---

[43] *Id.* at 460.

[44] *Id.*

[45] *Id.*

[46] *Id.*

No. 24-50378

defendant possessed," and (4) "other facts relevant to the defendant's relative causal role."[47]

The $100,000 awarded likely set the floor of the victim's losses, drawing from the harm directly caused by Brann. Although the district court did not consider the victim's mother's role relative to Brann's ordered restitution, she was later ordered to pay $100,000 in restitution, which is indicative of losses beyond the amount Brann has been ordered to pay. We cannot say on this record that $100,000 exceeded "the full amount of the victim's losses"[48] proximately caused by Brann.

This conclusion is further supported and buttressed by experience the federal courts have gained in dealing with child pornography restitution issues. In *Paroline*, for example, decided at the Supreme Court level 12 years

---

[47] *Id.*

[48] 18 U.S.C. § 2259(b)(1); *see also id.* § 2259(c)(2), which provides:

> **(2) Full amount of the victim's losses**.--For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim, including--
>
> > (A) medical services relating to physical, psychiatric, or psychological care;
> >
> > (B) physical and occupational therapy or rehabilitation;
> >
> > (C) necessary transportation, temporary housing, and child care expenses;
> >
> > (D) lost income;
> >
> > (E) reasonable attorneys' fees, as well as other costs incurred; and
> >
> > (F) any other relevant losses incurred by the victim.

ago in 2014, the victim sought "about $500,000 in future treatment and counseling costs."[49]   The district court had awarded restitution in a companion case involving the same victim based on "estimated costs of the victim's future treatment and counseling at $512,681.00," and the reasonableness of that cost projection was not disputed.[50]   Other Circuit Court decisions reflect total losses to child pornography victims in excess of $100,000. [51]

In *United States v. Dillard*,[52] notwithstanding an appeal waiver, the Fourth Circuit affirmed the district court's decision to award $100,000 in restitution to the child victim, even though her family had asked for only "$3,590 to pay counseling and related expenses," and the government asked the court to award twice that amount, $7,180.[53]   The defendant, who was

---

[49] *Id.* at 441.

[50] *See In re Amy Unknown*, 701 F.3d 749, 754 (5th Cir. 2012) (en banc), *vacated on other grounds*, *Paroline*, 572 U.S. 434 (2014).

[51] *See, e.g., United States v. Rothenberg*, 923 F.3d 1309, 1316-20 (11th Cir. 2019) (reflecting  acceptance of the district court's findings regarding estimated future costs of various victims, including: victim Jane's future medical and therapy costs of $101,027; child pornography victims similarly situated to victim Mya who had represented they "had psychological treatment costs exceeding $100,000"; victim Sarah's future psychiatric care costs between $265,710 and $303,150; victim Vicky's total therapy costs between $108,975 and $113,600; victim Amy's future counseling costs of $512,681; and victim Casseaopeia's future medical expenses of $329,721); *United States v. Sainz*, 827 F.3d 602, 605 (7th Cir. 2016) (affirming restitution award in the amount of $8,387.43, being 1/136 of the total loss, which calculates to be $1,140,690.48);*United States v. Dunn*, 777 F.3d 1171, 1179 (10th Cir. 2015) (reflecting that the victim's total loss was $583,995); *but see United States v. Bordman*, 895 F.3d 1048, 1052 (8th Cir. 2018) (reflecting acceptance of estimated costs to the victim including therapy, related expenses, and a vocational assessment and counseling, in the amount of $91,900); *United States v. Osman*, 853 F.3d 1184, 1188 (11th Cir. 2017) (affirming the amount of restitution requested, $16,250, to be paid by a defendant who sexually molested his one-year-old child, used his phone to video it, and shared the depictions).

[52] 891 F.3d 151 (4th Cir. 2018).

[53] *Id.* at 155.

nevertheless ordered to pay $100,000, had sexually assaulted a 5-year-old child over the course of more than one year and had "recorded the abuse—which included acts of vaginal and anal penetration—and uploaded those video files to the Internet."[54]  The district court "noted Dillard's sole responsibility for all losses Minor Girl A will suffer as a result of the sexual abuse and decision to disseminate it."[55]  That court recognized that "some part of her loss was as-yet 'unknowable,'" and the court "observed it was also not 'seriously dispute[d ]' that Dillard's sexual abuse of Minor Girl A would have 'long-term psychological effects [that] will require services.'"[56] The Fourth Circuit recounted that "[t]o determine an appropriate amount of restitution, the [district] court compared Minor Girl A's case to the records submitted on behalf of the non-contact victims [in the same case]."[57] The district court "observed that victims of this sort of offense, on average, suffered harm totaling well over one million dollars.  In light of these considerations, the [district] court found that '$100,000.00 [was] a very conservative figure representing [Minor Girl A's] likely future needs stemming from her abuse and exploitation.'"[58]  The Fourth Circuit noted the district court's conclusion as to "the 'roughly average damage to a victim of child pornography of $1,243,296.54' over the course of her lifetime."[59]

We do not cite *Dillard* for the proposition that a court may order restitution without evidence that a particular victim's losses were

_____

[54] *Id*. at 154.

[55] *Id*. at 155.

[56] *Id*. (alterations in original).

[57] *Id*.

[58] *Id*. (second and third alterations in original).

[59] *Id*. at 158.

proximately caused by a particular defendant. The *Dillard* decision is pertinent as confirmation that Brann's agreement and testimony that his stepdaughter would incur costs of at least $100,000 for future tutoring, counseling, and treatment finds support in similar cases.

This is not a case like *West*, where restitution was ordered "untethered to any determination of the loss suffered by the victim."[60] It is unlike *Paroline*, where the defendant was "one of thousands who ha[d] possessed and will in the future possess the victim's images but who has no other connection to the victim."[61] It is evident, from the plea agreement, PSR, and sentencing hearing, that Brann's conduct is the direct and proximate cause of the costs for counseling his stepdaughter has incurred or is "reasonably projected to . . . incur[] in the future."[62]

## VI

To the extent Brann's brief asserts a stand-alone claim that "[t]he district court abused its discretion by ordering restitution based on no evidence of victim loss or future counseling costs," we must determine whether such a claim is barred by the appeal waiver in Brann's plea agreement. Once again, *Hunter*[63] controls our analysis.

The Supreme Court held in *Hunter* that an appeal waiver is "unenforceable when it would result in a miscarriage of justice."[64] Brann's

---

[60] 137 F.4th at 400.

[61] 572 U.S. at 449; *see also id.* at 458-59.

[62] 18 U.S.C. § 2259(c)(2); *see id.* § 2259(c)(2)(A); *see also United States v. Barnett*, No. 23-20174, 2024 WL 3548461, at *3 (5th Cir. July 26, 2024) ("the record clearly shows that [the defendant] proximately caused injury to [the victim]").

[63] *Hunter v. United States*, 146 S.Ct. 1702 (2026).

[64] *Id.* at 1713.

no-evidence claim does not fall within the three non-exclusive examples the Court gave in *Hunter*. Brann is not directly asserting in his no-evidence claim that the imposition of restitution in the amount of $100,000 exceeds a statutory maximum sentence.[65] His claim does not argue that his "sentence . . . is infected with a blatant constitutional error."[66] Nor was his sentence imposed without "some minimum of civilized procedure."[67] The type of error Brann asserts here is not of "the kind that would bring the judiciary into disrepute."[68]

In any event, as our discussion above makes plain, there was evidence to support the award of restitution. The district court did not abuse its discretion in ordering $100,000 in restitution.

## VII

Brann and the government agree that the district court's written judgment contains a clerical error. A clerical error "exist[s] when 'the court intended one thing but by merely clerical mistake or oversight did another.'"[69] Brann pleaded guilty to and was sentenced for the offense of Sexual Exploitation of Children as set forth in 18 U.S.C. § 2251(a). The written judgment states the offense of conviction is Distribution of Child Pornography and cites 18 U.S.C. § 2252A(a)(2).

Accordingly, the written judgment incorrectly recites Brann's offense and statute of conviction. "It is within our discretion either to reform the

---

[65] *See id*. at 1714.

[66] *Id.*

[67] *Id*. (quoting *United States v. Adkin*s, 743 F.3d 176, 192-193 (7th Cir. 2014)).

[68] *Id.*

[69] *United States v. Buendia-Rangel*, 553 F.3d 378, 379 (5th Cir. 2008) (quoting *United States v. Steen*, 55F.3d 1022, 1025-26 n.3 (5th Cir. 1995)).

No. 24-50378

judgment on appeal or remand this case to the district court to do so."[70]  "In keeping with our court's common practice, we remand to the district court to reform the judgment."[71]

\*     \*     \*

For the foregoing reasons, we AFFIRM the district court's restitution order and judgment and REMAND to the district court for the limited purpose of reforming its judgment to reflect that Brann was convicted and sentenced under 18 U.S.C. § 2251(a).

-------------------

[70] *United States v. Gomez Gomez*, 23 F.4th 575, 578 (5th Cir. 2022); *see also* 28 U.S.C. § 2106; FED. R. CRIM. P. 36.

[71] *Gomez Gomez*, 23 F.4th at 578; *see id*. at 578 n.3 (collecting cases).